# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RANDALL S. HAGER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 cv 7772 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Randall Hager ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits under the Social Security Act. The Parties have filed cross-motions for summary judgment. For the reasons below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's Memorandum in Support of Summary Remand [dkt. 11], construed as a motion for summary judgment, is granted; the Commissioner's Motion for Summary Judgment [dkt. 15] is denied.

## I. Background

### a. Procedural History

Plaintiff filed an application for disability benefits on June 4, 2014. [Administrative Record ("R") 193-94.] Plaintiff claimed an alleged onset date of disability as of January 1, 2013. [R 193.] Plaintiff's claims were denied initially and again at the reconsideration stage, after which Plaintiff timely requested an administrative hearing, held on September 13, 2016 before Administrative Law Judge ("ALJ") Roxanne J. Kelsey. [R 27-63.] Plaintiff was represented by counsel,[1] and a Vocational Expert testified during the hearing. *Id.* On October 26, 2016, the ALJ issued a written decision denying

---
[1] Although the ALJ's opinion lists Plaintiff's counsel, Mr. Bryan J. Woodruff, as a non-attorney representative [R 10], all indications are that Mr. Woodruff is indeed an attorney. *See* Appointment of Representative [R 159-60] and administrative hearing transcript reflecting Mr. Woodruff as counsel to Plaintiff. [R 27].

Plaintiff disability benefits. [R 10-19.] On May 16, 2017, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the Commissioner. [R 1-6.]

### b. Plaintiff's Background[2]

Plaintiff was born January 2, 1964, and was 48 years old on his alleged disability onset date. [R 64.] Plaintiff has worked every year between 1989 and 2013, primarily as an export clerk, agent, and manager in freight forwarding. [R 216, 242.]

Plaintiff has been diagnosed with type II diabetes mellitus, stage 3 kidney disease, and peripheral neuropathy. [R 306, 412, 420.] Plaintiff also suffers from obesity, anxiety, and "macrocytosis likely secondary to excessive alcohol use."[3] [R 12-14, 308, 352, 407.] In February 2014, Plaintiff reported "gradually increasing" neuropathy symptoms in his legs for the prior three years. [R. 308.] Physical examinations revealed a gait disturbance and absent deep tendon reflexes and decreased sensation in his legs and an April 2014 electromyography study confirmed moderate motor-sensory, demyelinating, and axonal neuropathy in both of his legs. [R. 317, 319-20, 322, 326, 338, 341, 380, 383, 386, 415.] He complains of a constant burning and shooting pain that radiates from his knees down to his feet, constant numbness and tingling in his feet, and fatigue. [R. 308, 310, 317, 319, 321, 324, 337, 340, 379, 382, 385, 409, 412, 414.] He has "much trouble with walking," needs to rest after walking 100 yards, uses a cane (although it was not prescribed by a doctor) if he "may have to walk long distances or stand for a long period," and "[e]ven sitting for prolonged periods causes uncomfortable feeling in his legs." [R. 267-68, 415.] Plaintiff no longer drives as a result of the numbness in his feet. [R. 38, 349, 415; *see* fn. 8 regarding an incident of numbness while driving.] A November 2015 record reflects that Plaintiff had "been off [diabetes] meds for a while" and that he

---

[2] The Court limits its discussion of the factual background of this case relevant to the analysis provided herein.

[3] "Macrocytosis is a term used to describe red blood cells that are larger than normal…Macrocytosis isn't a specific disease, but it may indicate an underlying problem that requires medical evaluation…Treatment of macrocytosis, if needed, is directed at the underlying cause." Mayo Clinic, *Macrocytosis: What causes it?*, https://www.mayoclinic.org/macrocytosis/expert-answers/faq-20058234 (accessed August 27, 2018).

was previously on a medication for his neuropathy "which seemed to help to some degree but is too expensive." [R 410.]

In November 2015, Mark Gillis, M.D., Plaintiff's treating physician, opined in a treatment note that he "[does] not believe [Plaintiff] is capable of standing, sitting, or intermittent standing/sitting work." [R. 415.] Dr. Gillis also completed a Disability Impairment Questionnaire the same month, opining that Plaintiff's symptoms would likely increase in a competitive work setting because "prolonged sitting or standing is prohibited clinically," and that his neuropathic pain symptoms were severe enough to interfere with his concentration "frequently," which was defined as occurring from one-third to two-thirds of the workday. [R. 401-05.] Dr. Gillis opined that these limitations would apply as far back as 2012. [R. 405.]

c. **The ALJ's Decision**

On October 26, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. [R 10-19.] At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since his alleged onset date of January 1, 2013. [R 12.] At step two, the ALJ found that Plaintiff had the severe impairments of diabetes mellitus with peripheral neuropathy and obesity. [*Id.*] The ALJ found Plaintiff's chronic kidney disease and anxiety to be nonsevere impairments. [R 12-14.] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 14.]

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform sedentary work, with the exceptions that he can lift 20 pounds occasionally; only occasionally operate foot controls; not climb ladders, ropes, or scaffolds; occasionally balance and climb ramps or stairs; and have no more than occasional concentrated exposure to temperature extremes or to hazards

---

[4] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

3

such as dangerous, moving machinery or unprotected heights. [*Id.*] At step four, the ALJ found that Plaintiff was not capable of performing any of his past relevant work, which was a composite job[5] of shipping and receiving clerk (DOT 229.387.050) and export clerk (DOT 214.467.010), but that Plaintiff was capable of performing the (non-composite) job of export clerk which exists in a in significant number in the national economy. [R 18.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R 19.]

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are

---

[5] "Composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82–61, 1982 WL 31387, at *2.

jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because the ALJ improperly addressed Plaintiff's subjective symptom allegations because she failed to adequately address certain specific subjective symptom allegations or cite evidence to rebut them. [Dkt. 11, p. 6.] The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

The Court agrees with Plaintiff that the ALJ erred in her subjective symptom evaluation. The ALJ found Plaintiff's subjective symptom allegations, in general, "not entirely consistent" with the evidence of record for "reasons explained in [her] decision." [R 15.] However, the "reasons" the ALJ

refers to are never proffered; the ALJ's evaluation in the instant case amounts to a summary without the required analysis.

First, and most troubling because of a factual error, the ALJ noted that Plaintiff remains able "to walk between one-half to one mile to get his mail, and as such, I do not find he would be unable to do the walking required of sedentary work." [R 16]. This quote comes from a paragraph in the ALJ's decision where she weighs the state agency medical consultants' opinions. Not only is the Court unable to tell whether the ALJ intended this statement to relate to her subjective symptom evaluation or to her assessment of the state agency consultants' opinions, but the ALJ misstated a key factor she relied upon in determining Plaintiff was able to do the walking required in sedentary work. The ALJ misstated the distance which Plaintiff walked to get the mail. While there was some initial confusion between the ALJ and the Plaintiff at the administrative hearing as to how far away the mailbox was (*compare* R 36 *with* R 45-46), when the ALJ seeks to clarify her belief that going to the mailbox was a one mile round trip affair, Plaintiff stated, "Like I said…it's a quarter mile to the mailbox and a quarter mile back…I think you misunderstood me. It's in a condominium complex -- centrally located…It'd be about a quarter mile." [R 45.] In light of this clarification, the Court is troubled that the ALJ still persisted in her belief that the Plaintiff walked a mile daily.[6]

Plaintiff also testified that this 20-minute half-mile roundtrip walk to the mailbox and back is his only daily exercise [R 35-36], he needs to take a break when he gets to the mailbox (*i.e.*, a break is taken after a quarter-mile) [R 36], that walking kills him [R 37], and that he is "beat" and "physically winded" after walking similar (or shorter) distances across a parking lot. [R 46]. The ALJ neglected to

---

[6] After he testified that he needed to build the strength in his legs back up [R35], Plaintiff did aspirationally state that he would like to work his way up to walking all the way around his condominium complex, which would be a mile total. [R 36.] While the ALJ did note that "[Plaintiff] testified that he could walk for about a quarter of a mile each way to the mailbox in his condominium complex. Earlier in the hearing, the [Plaintiff] stated that he walks a mile roundtrip to the mailbox but that he needs to rest before he walks back home" [R 15], the Court believes Plaintiff's clarification should have sufficed to disabuse the ALJ of the notion that Plaintiff walks a mile a day, which is double the distance he testified he actually walks.

mention or analyze any of this in connection with the walking she believes Plaintiff capable of doing.[7] The Court also finds that the ALJ improperly neglected to explain how these short walks to the mailbox translate into an ability to work full-time, even at a sedentary level. The Seventh Circuit has repeatedly and harshly criticized ALJs for "placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (citations omitted). The Court believes the ALJ is guilty of that offense here. In addition to mentioning Plaintiff's daily walks, the ALJ also summarily noted that the Plaintiff "maintained the ability to care for his ill mother, manage household chores, and manage funds."[8] [R 13.] None of these scant daily tasks, particularly as done by Plaintiff with significant limitations, translate into an ability for Plaintiff to sustain full-time work. *Roddy*, 705 F.3d at 639. Moreover, the ALJ merely listed the walking and the three other daily tasks Plaintiff was allegedly able to complete and then failed to analyze them in such a way that allows the Court to meaningfully review how the ALJ came to her conclusions regarding these daily activities.

In addition to Plaintiff's subjective symptom allegations about walking, the only other subjective symptom allegation the ALJ specifically addressed was Plaintiff's complaints concerning vision problems caused by a prescription medication he was taking. While the ALJ did offer evidence of record contradicting Plaintiff's claims of vision problems (*i.e.*, Plaintiff denied side effects [R 16];

---

[7] The ALJ did note her belief that Plaintiff needed to rest after walking a half-mile to the mailbox under her rubric where the mailbox trip is one mile roundtrip. This statement is faulty because it is based on faulty information.

[8] As for the ability to care for his ill mother or what this might entail, the ALJ does not provide a record cite for this proposition. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."). The only reference the Court has found in this respect is when Plaintiff testified at the administrative hearing that he once had a driving scare (his feet could not "feel the pedals") while taking his now-deceased mother to the dentist, and this scare is why he let his driver's license expire. [R 38.] As for household chores, the ALJ implicitly overstates the chores that Plaintiff does. Plaintiff testified that he "cooks," which largely consists of reheating meals in a crockpot, and that he does dishes, which consists of loading the dishwasher or handwashing an item while resting his head against the cabinets. [R 39.] Elsewhere in her decision, the ALJ noted that "the Plaintiff reported that his cooking habits have changed because he cannot stand for long periods"[R 13], which is a problematic acknowledgement by the ALJ in and of itself because of the Seventh Circuit's holding that an "inability…to complete even simple chores requiring standing, like cooking, does not indicate an ability to work even a sedentary job full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

7

Plaintiff stated that his recent vision test was normal [*Id.*]⁹), this is not enough to overcome the myriad of other subjective symptom complaints the ALJ failed to analyze. The ALJ failed to analyze Plaintiff's claims that he cannot sit or stand for prolonged periods, that he cannot sit for longer than 45 minutes at a time, and that he cannot stand for longer than five minutes at a time. [R 30, 45-46, 262.] The ALJ's analysis of Plaintiff's vision problems and her faulty analysis of Plaintiff's walking (with or without a cane) has nothing to do with these other allegations.

"An ALJ is entitled to dismiss subjective evidence of pain but only after weighing [it] against other evidence in the record…[a] failure to evaluate and provide specific reasons for rejecting probative evidence constitutes grounds for a remand." *Thompson v. Sullivan*, 741 F. Supp. 1297, 1301 (N.D. Ill. 1990) (citing, *inter alia*, *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984)) (other citations and some signals omitted). Here, the ALJ summarized some of the medical evidence, weighed the opinion evidence, and concluded that Plaintiff's "subjective complaints have been taken into account, both individually and in combination." [R 17.] It was not enough for the ALJ to have listed the fact that some of the subjective symptom complaints detailed above were reported by Plaintiff, but then provide no further explanation – other than boilerplate language that they were "not entirely consistent" – without explaining how, or if, they were taken into account. The ALJ's opinion does not contain the required weighing of Plaintiff's subjective complaints against the evidence of record. The Court agrees with the Plaintiff that without further explanation, the ALJ's boilerplate conclusions defy meaningful review. *See Bjornson v. Astrue*, 671 F.3d 640, 644-645 (7th Cir. 2011) (collecting cases where Seventh Circuit criticized use of similar "opaque boilerplate" language); *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir.1995) (ALJ must offer a minimum level of articulation of his analysis of the evidence to allow the court to trace the path of his reasoning). The ALJ offered no reason for discounting

---

⁹ Interestingly, Plaintiff testified that while his recent vision test was fine, he did not take his medication that day. [R 59.] He also testified that his "vision starts to go" after he takes his second daily dose of the medication. [R 39.] Perhaps an updated vision test might shed some light on this subjective symptom complaint.

Plaintiff's claims concerning sitting and standing. Thus, the ALJ failed to "build an accurate and logical bridge from the evidence to the conclusion," which prevented the Court from performing an informed review of the reasons underlying her subjective symptom evaluation. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir.2008). Therefore, we must remand this matter.

As a final note, the Court is concerned by the ALJ's lack of exploration of the topic of whether Plaintiff was able to afford his medications, despite at least one clear mention of record that Plaintiff was indeed *unable* to afford his medications. [R 410.] It does not appear the ALJ drew a negative inference from the occasions Plaintiff was off his medications [R 407, 410] (nor did she consider the potentially increased symptomology at those times), so under the applicable Social Security Rulings, the ALJ did not strictly have to delve into the reasons behind Plaintiff's failure to be medication-noncompliant. *See* SSR 16-3p and SSR 96-7p. (ALJ must not draw negative inference without first considering possible reasons, including inability to afford medical care, that a claimant may not comply with treatment consistent with the degree of his complaints.) Still, it seems curious that the ALJ would not address either the months-long periods Plaintiff was off his medications or the reasons therefore. Similarly, the Court is also concerned by the ALJ's lack of discussion, whether at the administrative hearing with Plaintiff or in her decision, of Plaintiff's alcohol abuse and the interplay, if any, of that on his other medical diagnoses. [R 308, 361, 372, 383, 388, 407-08, 413, 438.] While the ALJ does cite a medical record detailing that Plaintiff's "new neuropathy is probably alcohol related as well" [R311], she engages in no analysis of this statement or Plaintiff's alcohol abuse in general, the same flaw that the rest of her decision suffers from.

## IV. Conclusion

Because the ALJ's opinion was undermined by an inadequate discussion of the issues, the Court must reverse and remand for proceedings consistent with this opinion. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff.

9

Plaintiff's Motion for Summary Judgment [dkt. 11] is granted; the Commissioner's Motion for Summary Judgment [dkt. 15] is denied.

Entered: 8/28/2018

_____
U.S. Magistrate Judge, Susan E. Cox